Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| BERTHA MEZA, individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> THE PROCTER & GAMBLE COMPANY, <br><br> *Defendant*. | Case No. 5:23-cv-00091 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## **Table of Contents**

I.    Introduction. ................................................................................................ 1

II.   Parties. ........................................................................................................ 1

III.  Jurisdiction and Venue. ............................................................................... 2

IV.   Facts. ........................................................................................................... 2

    A.    Defendant makes, markets, and sells DayQuil products prominently labeled "Non-Drowsy." ................................................................................ 2

    B.    The Non-Drowsy DayQuil Products cause drowsiness. ........................ 5

    C.    Defendant's Non-Drowsy representations misled reasonable consumers. ................. 7

    D.    Plaintiff was misled by Defendant's misrepresentations. .................. 10

    E.    Plaintiff lacks an adequate remedy at law ........................................ 11

    F.    Class Action Allegations ................................................................... 12

V.    Causes of Action. ...................................................................................... 14

VI.   Jury Demand. ............................................................................................. 20

VII.  Prayer for Relief. ....................................................................................... 20

## I.    Introduction.

1.    Defendant makes, sells, and markets "DayQuil" over-the-counter cough, cold and flu medicine (the "Non-Drowsy DayQuil Products" or "Products"). [1]  These medicines contain the active ingredient Dextromethorphan Hydrobromide ("DXM"), an ingredient that causes drowsiness.

2.    Defendant's Non-Drowsy DayQuil Products state prominently on the front of their label that they are "Non-Drowsy" products.  By prominently labeling these products as "Non-Drowsy," Defendant led Plaintiff and other reasonable consumers to believe that the Non-Drowsy DayQuil Products do not cause drowsiness, and that drowsiness is not a side effect of those products.

3.    But the truth is that products containing DXM—including the Non-Drowsy DayQuil Products—do cause drowsiness, and that drowsiness is a common side effect of DXM (a fact not known by the average consumer).

4.    In this way, Defendant misled and overcharged Plaintiff and other reasonable consumers.

## II.    Parties.

5.    Plaintiff Bertha Meza is a citizen of California (domiciled in Moreno Valley).  The proposed class (identified below) includes citizens of every state within the United States.

6.    Defendant The Procter & Gamble Company is a citizen of Ohio.  It is an Ohio corporation with its principal place of business at Procter & Gamble Plaza, Cincinnati, Ohio 45202.  Directly and through its agents, Procter & Gamble has substantial contacts with, and receives substantial benefits and income from, the State of California.

---

[1] The Non-Drowsy DayQuil Products include all DayQuil products sold by Defendant that are labeled "Non-Drowsy" and that contain Dextromethorphan Hydrobromide.

## III.    Jurisdiction and Venue.

7.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

8.    The Court has personal jurisdiction over Defendant because it sold the Non-Drowsy DayQuil Products to consumers in California, including Ms. Meza.

9.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including selling the Non-Drowsy DayQuil Products to Ms. Meza.

## IV.    Facts.

### A.    Defendant makes, markets, and sells DayQuil products prominently labeled "Non-Drowsy."

10.    Procter & Gamble manufactures, distributes, markets, and sells the Non-Drowsy DayQuil Products.

11.    The front label of each Product prominently states that the product is "Non-Drowsy."  For example:

**DayQuil and NyQuil two-packs:**



*Red annotations added*

1

2 **DayQuil Cold & Flu bottles:**

3



*Red annotations added*

12.     These representations are materially the same across all Non-Drowsy DayQuil Products.

13.     In reality, however, the Non-Drowsy DayQuil Products cause drowsiness, and drowsiness is a known side effect of the products.

14.     Based on the prominent "Non-Drowsy" label included on the face of each product, a reasonable consumer would believe that the products do not cause

drowsiness.  That is, a reasonable consumer would believe that drowsiness is *not* a side effect of the product.

### B.    The Non-Drowsy DayQuil Products cause drowsiness.

15.    In truth, products containing DXM—like each of the Non-Drowsy DayQuil Products—do cause drowsiness.  Drowsiness is a documented side effect of DXM at the recommended dosages.

16.    To begin, the National Institutes of Health (NIH) provides "high quality" and "trusted" information about drug side effects, in the NIH Medline Plus database. [2] The drug information on DXM states (in relevant part)[3]:



17.    Indeed, by industry standards. drowsiness is a common side effect at the recommended dosages.  According to a 2017 GlaxoSmithKline presentation on drug labeling, a "common" adverse reaction (i.e., side effect) is one that occurs in 3% or more of drug takers and a "very common" side effect occurs in 10% or more of drug takers.

---

[2] https://medlineplus.gov/druginfo/meds/a682492.html; see https://medlineplus.gov/about/ ("MedlinePlus is a service of the National Library of Medicine (NLM), the world's largest medical library, which is part of the National Institutes of Health (NIH). … Our mission is to present high-quality, relevant health and wellness information that is trusted")

[3] Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html. Separately, this database also identifies drowsiness as a symptom of "overdose." That is unsurprising—drowsiness is a side effect of normal use, so naturally is it also a side effect of overdose.

18.    A study of DXM found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine. [4]  The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied.  And the patients in this clinical study were given an even smaller dosage of DXM (15 mg three times a day) than the recommended dose found in Non-Drowsy DayQuil products. [5]

19.    For this reason, the Federal Aviation Administration prohibits pilots from flying after ingesting Dayquil because it "contains dextromethorphan." [6]

| Cough | Cough/cold products | Coricidin (allowed if no chlorpheniramine)<br><br>guaifenesin (found in Mucinex and Robitussin)<br>Mucinex fast-max severe congestion and cough (liquid)<br><br>Identify combo vs isolated | dextromethorphan (Delsym)<br><br>Dayquil (contains dextromethorphan)<br><br>Most "night-time" or "PM" medications contain a sedating antihistamine:<br>- Coricidin HBP cough & cold (contains chlorpheniramine)<br>- Nyquil (contains doxylamine) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines. If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives after the last dose (see above). |
|---|---|---|---|---|

20.    The FAA cautions against both (1) "combination products" that have "sedating antihistamines" for "night-time" use and, independently (2) purportedly daytime cough medicines that contain DXM.  As noted, the FAA specifically warns

---

[4]  E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997). The study reports this side effect as "somnolence."  Somnolence means "the quality or state of being drowsy." Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence (last accessed November 22, 2021).
[5] For example, DayQuil Cold & Flu Relief Liquid contains 20 mg of DXM per 30 ml of liquid cough syrup and the recommended dosage for adults and children 12 and over is 30 ml every 4 hours.
[6]
https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf

against DayQuil, a DXM drug that is antihistamine free.  This is because, as the FAA has recognized, DayQuil can cause drowsiness.

### C.  Defendant's Non-Drowsy representations misled reasonable consumers.

21.  The Food and Drug Administration prohibits drug labeling that is "false or misleading."  21 C.F.R. § 201.6.  It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

22.  This case is about Defendant's affirmative, "Non-Drowsy" representation on the Product labels.  No FDA regulation or rule allows antitussives containing DXM to be labeled "Non-Drowsy." The FDA has never considered the "Non-Drowsy" claim (much less determined that it is truthful and not misleading).

23.  Based on the fact that Defendant labels the Non-Drowsy DayQuil Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness.  Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products (much less a common side effect).  According to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't make you sleepy."[7]  This is the plain meaning of "non-drowsy," which means "not causing or accompanied by drowsiness."[8]

24.  Unlike Defendant, some other drug makers do not falsely claim that DXM-products are non-drowsy.  For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt.  But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth:

---

[7] "How to read over the counter (OTC) drug labels," Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm
[8] https://www.merriam-webster.com/medical/nondrowsy



25.    Defendant could have simply omitted the false and misleading "Non-Drowsy" statements from its products.

26.    Or, if Defendant wanted to say something to indicate that a Non-Drowsy DayQuil Product might cause *less* drowsiness than another product, it could have made a truthful statement to this effect, as other drug makers do.

27.    For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate.  Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness.  The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy:"



28.     Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer.  In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy.  For example, all else equal, a reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake).  As a second example, if a consumer is planning to engage in activities that require them to be alert, or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does.  Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous.  For example, taking a drug that causes drowsiness while driving, or flying a plane, is dangerous.

29.     Defendant's false statements increased the demand for Non-Drowsy DayQuil Products and allowed Defendant to charge a price premium.  As explained above, consumers specifically value the "Non-Drowsy" claim because consumers demand cough medicine that will not make them drowsy (e.g., during the day, at work or while driving) and that they can take during the day.  As a result, Defendant was able to charge more for these products than it would have been able to had the labeling been truthful.  Accordingly, as a direct result of Defendant's false statements, Defendant was able to charge a price premium for these products.  As purchasers, Plaintiff and each class member paid this price premium and sustained economic injury.

30.     In addition, because the Non-Drowsy DayQuil Products actually do cause drowsiness, Plaintiff and each class member did not get what they paid for: a cough medicine that does not cause drowsiness.  Instead, they received something that is worth less: a cough medicine that does cause drowsiness.  Plaintiff and each class member sustained an economic injury for this additional reason, i.e., they received something worth less than the price they paid for it.

9

31.     Moreover, the Non-Drowsy DayQuil Products are sold specifically for use in situations where it is not acceptable for consumers to become drowsy (e.g., while driving, working, or supervising children).  As a result, the products that Plaintiff and each class member did receive in exchange for the price they paid— Non-Drowsy DayQuil Products that cause drowsiness—were not suitable for, and were thus worthless for, their intended purpose.  So the economic injury Plaintiff and each class member sustained consists of the entire purchase price of the products, because what they received was worthless for its intended use.

### D.    Plaintiff was misled by Defendant's misrepresentations.

32.     In November 2022, Plaintiff bought a bottle of DayQuil "Non-Drowsy" Severe Cold & Flu Relief from a CVS store in Moreno Valley, California.  The package said "Non-Drowsy" on the label, and she read and relied on those statements when purchasing the product.  Accordingly, these representations were part of the basis of the bargain, in that she would not have purchased the DayQuil "Non-Drowsy" Daytime Severe Cold & Flu Relief on the same terms had she known these representations were not true.  However, Plaintiff did not receive the benefit of her bargain because her Non-Drowsy DayQuil Product was not, in fact, a "Non-Drowsy" medication.  When Plaintiff took the recommended dose of the medication as directed by Defendant, she became unexpectedly drowsy.  Plaintiff was not on any other medication that would have caused drowsiness, she was not drowsy right before she took the medicine, and she became drowsy shortly after taking the medicine. Given the circumstances, there was no other potential cause of her drowsiness.

33.     She would not have bought this product had she known that the product did, in fact, cause drowsiness, and that drowsiness was a known side effect of the product.  The price Plaintiff paid for the DayQuil medication was inflated due to the misleading "Non-Drowsy" label, for the reasons explained above.  In fact, because the product causes drowsiness, it was worthless to her.

34.    To be sure, Plaintiff would purchase Non-Drowsy DayQuil Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised). Plaintiff, however, faces an imminent threat of harm because she will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

### E.    Plaintiff lacks an adequate remedy at law.

35.    As described above, Plaintiff suffers an actual and imminent threat of future harm that cannot be cured with monetary damages.  For this harm, Plaintiff lacks an adequate remedy at law and requires injunctive relief.

36.    Also, a legal remedy is not adequate if it is not as certain as an equitable restitution.  To obtain a full refund as damages, Plaintiff must show that the Products have essentially no market value.  In contrast, Plaintiff can seek restitution without making this showing.  This is because Plaintiff purchased a product she would not otherwise have purchased, but for Defendant's misrepresentations. Obtaining a full refund at law is less certain that obtaining a refund in equity.

37.    Plus, winning damages under the CLRA requires additional showings not required under the UCL and FAL.  For example, to obtain damages under the CLRA, Plaintiff must prove that she complied with the CLRA's notice requirement. No such requirements exist to obtain restitution under the UCL or FAL.

38.     In addition, the CLRA prohibits only particular categories of deceptive conduct.  By contrast, the UCL more broadly prohibits deceptive, unfair, or unlawful conduct. In particular, Plaintiff's UCL "unlawful" prong claim incorporates Defendant's violation of the California Sherman Act.  This particular theory is not available for Plaintiffs' legal claims and, in material respects, is easier to prove.  In a similar vein, the FAL more broadly prohibits deceptive conduct, compared to the CLRA.

39.    By the same token, Plaintiff's warranty claim requires additional showings, compared to her UCL, FAL, or unjust enrichment claims.  For example, to

prevail on her breach of warranty claim, Plaintiff needs to show that "Non-Drowsy" statement is a warranty and that the warranty was part of the basis of the bargain. No such showings are required by the UCL or FAL, or for an unjust enrichment theory. In fact, the UCL and the FAL were enacted specifically to create new claims and remedies not available at common law. And unjust enrichment exists in part because contractual claims (like warranty) are often more difficult to establish. In this way, Plaintiff's UCL and FAL claims, and Plaintiff's unjust enrichment claim, is more certain than her legal claims.

40.    Finally, the remedies at law available to Plaintiffs are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

### F.    Class Action Allegations.

41.    Plaintiff brings certain claims for the proposed class of: all persons who purchased a Non-Drowsy DayQuil Product in the United States during the applicable statute of limitations period (the "**Nationwide Class**" or "**Class**").

42.    For additional claims, Plaintiff brings those claims for a subclass of consumers who, like Plaintiff, purchased Non-Drowsy DayQuil Products in California (the "**California Subclass**" or "**Subclass**").

43.    The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity*

44.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  Based on the pervasive distribution of Non-Drowsy DayQuil Products, there are millions of proposed class members.

*Commonality*

45.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- Whether the Non-Drowsy DayQuil Products cause drowsiness;
- Whether Defendant's labeling of the Non-Drowsy DayQuil Products as "Non-Drowsy" is deceptive and misleading;
- Whether Defendant breached its express "Non-Drowsy" warranty;
- Damages or restitution needed to reasonably compensate Plaintiff and the proposed class.

*Typicality*

46.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased Non-Drowsy DayQuil Products.  Like the proposed class, Plaintiff would not have purchased the products, or would have paid less for them, had she known that they cause drowsiness.

*Predominance and Superiority*

47.    The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.

48.    Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  For example, a core

liability question is common: whether Defendant's "Non-Drowsy" representations are false and misleading.

49.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

### *Classwide injunctive relief*

50.    Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

## V.    Causes of Action.

### Count 1: Breach of Express Warranty

### (on behalf of Plaintiff and the Nationwide Class)

51.    Plaintiff incorporates by reference each and every factual allegation set forth in section I-IV above.

52.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.

53.    Defendant, as the designer, manufacturer, marketer, distributor, supplier, and/or seller of the Non-Drowsy DayQuil Products, issued material, written warranties by representing that the products were "Non-Drowsy."  This was an affirmation of fact about the products (i.e., a description of the effects of the ingredients) and a promise relating to the goods.

54.    This warranty was part of the basis of the bargain for Plaintiff and Class members.  Plaintiff herself read and relied on this warranty.

55.    The Non-Drowsy DayQuil Products do not conform to the above-referenced representation because, as alleged in detail above, they cause drowsiness. Thus, the warranty was breached.

56.    Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's false warranty; or (c) they received products that were worthless for their intended purpose.

## Count 2: Violation of California's Unfair Competition Law (UCL)
### (on behalf of Plaintiff and the California Subclass)

57.    Plaintiff incorporates by reference and re-alleges each and every factual allegation set forth in Sections I-IV above.

58.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

59.    As alleged in detail above, Plaintiff lacks an adequate remedy at law.

60.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

61.    Defendant engaged in unlawful conduct violating the California Sherman Act, Cal. Health & Safety Code § 110390, which prohibits drug labeling that is "false or misleading in any particular."

***The Fraudulent Prong***

62.    As alleged in detail above, Defendant's "Non-Drowsy" representations were false and misleading.  Defendant's misrepresentations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.

***The Unfair Prong***

63.    Defendant violated established public policy by violating the CLRA and FAL, as alleged below and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, FAL, and Sherman Act).

64.    The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the side effects of an over-the-counter medication.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading medication labels only injure healthy competition and harm consumers.

65.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

66.    Plaintiff and the Class could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceiving to reasonable consumers like Plaintiff.

*    *    *

67.    Plaintiff saw, read and reasonably relied on the "Non-Drowsy" representation when purchasing Non-Drowsy DayQuil Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

68.    In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy DayQuil Products.

69.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

70.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's misrepresentations; or (c) they received products that were worthless for their intended purpose.

16

### Count 3: Violation of California's False Advertising Law (FAL)

### (on behalf of Plaintiff and the California Subclass)

71.    Plaintiff incorporates by reference and re-alleges each and every factual allegation set forth in Sections I-IV above.

72.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

73.    As alleged in more detail above, Plaintiff lacks an adequate remedy at law.

74.    As alleged more fully above, Defendant has falsely advertised Non-Drowsy DayQuil Products by falsely representing that the products do not cause drowsiness and that drowsiness is not a side effect of the products.

75.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant should have known, through the exercise of reasonable care, that these statements were inaccurate and misleading.

76.    Plaintiff saw, read and reasonably relied on the "Non-Drowsy" representation when purchasing Non-Drowsy DayQuil Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

77.    In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy DayQuil Products.

78.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

79.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's misrepresentations; or (c) they received products that were worthless for their intended purpose.

## **Count 4: Violation of California's Consumer Legal Remedies Act (CLRA)**
### **(on behalf of Plaintiff and the California Subclass)**

80.     Plaintiff incorporates by reference and re-alleges each and every factual allegation set forth in Section I-IV above.

81.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

82.     Plaintiff and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

83.     Plaintiff, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

84.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

85.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and the other members of the California Subclass that the Non-Drowsy DayQuil Products do not cause drowsiness, and that drowsiness is not a side effect of the products, when in fact, the products do cause drowsiness.

86.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

87.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

88.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy DayQuil Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

18

89.    In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy DayQuil Products.

90.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

91.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's misrepresentations; or (c) they received products that were worthless for their intended purpose.

92.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the California Subclass, seeks injunctive relief.  Pursuant to statute, at this time Plaintiff seeks only injunctive relief under the CLRA. Plaintiff has contemporaneously provided notice to Defendant and may later amend to add a CLRA damages claim.  Cal. Civ. Code § 1782 (d).

## **Count 5: Quasi-Contract / Unjust Enrichment**
### **(on behalf of Plaintiff and the California Subclass)**

93.    Plaintiff incorporates by reference and re-alleges each and every factual allegation set forth in Sections I-IV above.

94.    Plaintiff alleges this claim individually and on behalf of the California Subclass.

95.    As alleged in more detail above, Plaintiff lacks an adequate remedy at law.

96.    As alleged in detail above, Defendant's false and misleading labeling caused Plaintiff and the Subclass to purchase Non-Drowsy DayQuil Products and to pay a price premium for these products.

97.     In this way, Defendant received a direct and unjust benefit, at Plaintiff and the Subclass's expense.

98.     Plaintiff and the Subclass seek restitution.

**VI.    Jury Demand.**

99.     Plaintiff demands a jury trial on all issues so triable.

**VII.   Prayer for Relief.**

100.    Plaintiff seeks the following relief for herself and the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed Classes and Subclass;
- Damages, including statutory, treble, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's illegal conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law; and
- Any additional relief that the Court deems reasonable and just.

Dated: January 18, 2023                    Respectfully submitted,

By: */s/ Jonas B. Jacobson*

Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP

201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066

*Counsel for Plaintiff*